# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| BENJAMIN SINGLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV405-141 |
| | ) |
| J. DON MARTIN ET AL., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Benjamin Singleton filed this 42 U.S.C. § 1983 action on August 8, 2005, alleging that the Liberty County Sheriff's Department and five of its employees had deprived him of his rights under the Fourth and Fourteenth Amendments. Doc. 1. He later filed an amended complaint naming two additional defendants, Tracy Jennings and the "Liberty County Government." Doc. 17. On June 12, 2006, the Court conducted an initial screening of Singleton's original and amended complaints pursuant to 28 U.S.C. § 1915A. Doc. 18. As a result of that screening, the Court dismissed four of the named defendants and ordered service of Singleton's original and amended complaints upon the four remaining

defendants—Captains Acey Lewis and Gerald Brinkley, and Lieutenant Eurith Eason, all of the Liberty County Sheriff's Department, as well as Agent Tracy Jennings of the MACE Drug Task Force. Id. The United State Marshal received service waivers from three of those defendants; however, Cpt. Acey Lewis was not served with Singleton's complaints because he was in Iraq when the marshal attempted to so. Doc. 22.

The three defendants who did execute service waivers have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 64. Singleton has responded by filing a motion for summary judgment. Doc. 74. For the reasons set forth below, the defendants' motion should be **GRANTED**, and Singleton's motion should be **DENIED**.

I. **BACKGROUND FACTS**

According to Singleton's complaint, Cpt. Lewis and Lt. Eason conducted a traffic stop of his vehicle on June 2, 2002. Doc. 1. The traffic stop was not predicated upon any traffic violation or probable cause that Singleton had engaged in criminal conduct. Id. Rather, the officers had received a tip that a suspicious vehicle that matched a description of

Singleton's vehicle had been making several passes in a neighborhood known for drug-related activities. Id.

Once Singleton stopped his vehicle, he exited and was met immediately by Lt. Eason. Eason asked for Singleton's license and insurance card. Id. Eason claims to have detected an odor of alcohol on Singleton's breath, which prompted him to seek and obtain Singleton's permission to search the vehicle. Id. Soon thereafter, Cpt. Brinkley arrived at the scene and joined the search, finding an object bearing the appearance of a crack pipe near the car's front seat. Id.

Although the officers informed Singleton that he was not under arrest, they did ask him to accompany them to the police station to "get this matter straight." Id. Singleton drove his car to the station, where he was greeted by MACE Agent Tracy Jennings. Id. Agent Jennings informed Singleton that no charges would be filed against him that night, but that charges could be forthcoming if the crack pipe tested positive for cocaine. Id. According to Agent Jennings' report, which Singleton attached to his original complaint, Singleton responded to Agent Jennings' disclosure of possible criminal charges by stating that the pipe belonged to another male who had been a passenger in his car that night.

Id. at 21-22 (as numbered by plaintiff). In the body of his complaint, however, Singleton alleges that Cpt. Brinkley planted the crack pipe as part of a conspiracy to bring false charges against him. Id. at 16.

Regardless of which version is true, there is no dispute that while he was at the police station answering questions about the crack pipe, Singleton disclosed to Agent Jennings that he was on parole for a prior offense. Id. at 22. Jennings told Singleton that she would have to tell his parole officer about the incident. Id. Singleton's parole officer learned of the June 2 incident, and at some point between Singleton's June 2, 2002 questioning at the police station and his August 2, 2002 bond hearing on the cocaine possession charges, he was arrested and incarcerated for violating the terms of his parole.[1]

---

[1] Defendants state that the parole violation was "unrelated" to the cocaine possession charge and point out that Singleton continues to be incarcerated as a parole violator. Doc. 64 at 3, n. 3, 8-9. At one point in his response to the motion for judgment on the pleadings, Singleton makes the somewhat cryptic comment that "said conduct (alleged [)] was employed to revoke plaintiff [']s parole." Doc. 74 at 5. Conceivably, Singleton is challenging defendants' assertion that his parole was revoked for violations unrelated to the crack pipe incident. But since Singleton has apparently never challenged the revocation of his parole, there is good reason to doubt this interpretation of his comment (for if Singleton believed that his current custodial status resulted from a parole revocation premised solely on the discovery of evidence later suppressed by the state court, he would almost certainly have sought release from that custody). Thus, unless Singleton states otherwise in his objections to this Report and Recommendation, the Court will assume that his parole was revoked for conduct unrelated to the discovery of the crack pipe in his vehicle on June 2, 2002.

On August 1, 2002, Agent Jennings received a lab report identifying the substance inside of the crack pipe as cocaine. Id. The next day, August 2, she obtained a warrant for Singleton's arrest on charges of cocaine possession. Id. Before serving the warrant, she discovered that Singleton was already in the Liberty County Jail for parole violations. Id. She served the warrant on him at the jail and brought him before a state judge for a first appearance hearing. Id. Although the judge set Singleton's bond at $10,000, Agent Jennings returned Singleton to the jail to continue his incarceration for parole violations. Id. Agent Jennings' report states that Singleton then reiterated his assertion that the crack pipe had belonged to his passenger, not him. Id.

Thereafter, Singleton filed a motion to suppress the crack pipe. On September 2, 2004, a state court granted the motion, finding that the search of Singleton's vehicle "was illegal and was without warrant and was without probable cause." Doc. 1 at 25. In the wake of Singleton's successful motion to suppress, the state decided to drop the cocaine possession charge against Singleton.[2] Id. at 24.

---

[2] The dates on the state court documents attached to Singleton's complaint disagree over the date that the state court granted the motion to suppress. One order granting the motion to suppress is dated October 29, 2004. Doc. 1 at 25. But another

On August 8, 2005, Singleton filed his original § 1983 complaint, alleging negligence as well as equal protection and due process violations. Doc. 1 at 12, 17. In his amended complaint, Singleton was more specific, alleging false arrest and false imprisonment based on the allegedly unconstitutional stop and search of his car on June 2, 2002, and his subsequent arrest on August 2, 2002. Doc. 17.

## II. LEGAL DISCUSSION

The defendants' motion for judgment on the pleadings derives from Georgia's two-year statute of limitations, O.C.G.A. § 9-3-33, which applies to 42 U.S.C. § 1983 claims. <u>Giles v. Garwood</u>, 853 F.2d 876, 877 (11th Cir. 1988). According to the defendants, Singleton's false arrest and false imprisonment terminated on August 2, 2002, when Agent Jennings served him with an arrest warrant and he appeared at the bond hearing. Doc. 64. If defendants' argument is correct, Singleton's two-year

---

is dated September 2, 2004. <u>Id.</u> at 24. And the district attorney's *nolle prosequi* motion states that the court granted the motion to suppress on September 1, 2004. <u>Id.</u> at 23. Because it does not affect the outcome of this case, the Court will consider September 2, 2004 as the appropriate date.

6

limitations period expired on August 2, 2004, a year before he actually filed this action under § 1983. Id.

Singleton responds that the limitations period did not begin until September 2, 2004, when the state court granted his motion to suppress. According to Singleton, since the basis for his claim did not "manifest itself" until September 2, 2004, that is the date that signaled the start of the limitations period. Doc. 74 at 4–5.

### A. Timeliness of Singleton's False Imprisonment Claim

In Wallace v. Kato, 127 S. Ct. 1091 (2007), the Supreme Court answered the question of when a § 1983 cause of action for false arrest or false imprisonment accrues and when the limitations period begins to run. Because Wallace is a recent decision with facts bearing directly on the outcome of this case, an in-depth analysis is merited.

In January 1994, Chicago police officers conducting a murder investigation located Wallace and transported him to a local police station for questioning. Id. at 1094. After a lengthy interrogation, the fifteen-year-old suspect waived his Miranda rights and confessed to the murder. Id. He was tried and convicted. Id. On direct appeal, an Illinois court

concluded that the police officers had violated Wallace's Fourth Amendment rights by arresting him without probable cause. Id. That court determined that even if Wallace's initial trip to police station was voluntary, "his presence there escalated to an involuntary seizure prior to his formal arrest." Id. (citation and quotation marks omitted). Although the case was eventually remanded for a new trial, state prosecutors dropped the charges against Wallace on April 10, 2002. Id.

Less than a year later, on April 2, 2003, Wallace filed a 42 U.S.C. § 1983 action in which he sought, among other things, damages from the arresting officers based on a theory of false arrest. Id. The Seventh Circuit affirmed the district court's grant of summary judgment to the officers, concluding that Wallace's § 1983 action was time barred by many years because his cause of action accrued at the time of his arrest in 1994, not when his conviction was set aside in April 2002. Id. The Supreme Court agreed with the Seventh Circuit.

The Court's analysis began with the recognition that state law controls many aspects of a § 1983 claim, including the length of the applicable statute of limitations. Id. at 1094-95. The Court also noted that the "[a]spects of § 1983 . . . not governed by reference to state law

are governed by federal rules conforming to general common-law tort principles. Under those principles, it is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action." Id. at 1095 (citations and quotation marks omitted). A plaintiff has such an action when he "can file suit and obtain relief." Id. (citation and quotation marks omitted).

After setting forth those general principles, the Court narrowed its focus to Wallace's specific claim for false arrest, which it concluded is subsumed under the broader tort of false imprisonment. Id. ("False arrest and false imprisonment overlap; the former is a species of the latter."). The Court then defined false imprisonment as "detention *without legal process*," id., and concluded that Wallace's warrantless detention in January 1994 was the accrual date of his false imprisonment claim.

Turning to the question at issue—the running of the limitations period for filing a § 1983 action for false imprisonment—the Court noted that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." Id. at 1096. And in a case of continuing detention, a person's false imprisonment ends when the

alleged victim "becomes held pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." Id. After a detainee's confinement becomes a product of legal process, his continued detention may still be unlawful, but any damages suffered after that point must be recovered under the "entirely distinct" tort of malicious prosecution, "which remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." Id. As a result of the distinction between malicious prosecution and false imprisonment, the Court concluded that Wallace's "contention that his false imprisonment ended upon his release from custody, . . . must be rejected. It ended . . . when legal process was initiated against him, and the statute would have begun to run from that date." Id. Accordingly, the Court held that Wallace's claim for false imprisonment was untimely. Id. at 1097.

Applying Wallace's lessons to this case, the Court has no choice but to find that Singleton's claim is time barred. Singleton's allegedly unlawful seizure began and ended on June 2, 2002, when the police pulled over his car, found a suspected crack pipe inside the vehicle, and invited (or directed) Singleton to drive to the jail for additional questioning. Doc.

1 (and attached exhibits). After that questioning concluded, Singleton "was then released." Id. (unnumbered exhibit denoted by plaintiff as p. 21). Although he was jailed soon thereafter, his confinement resulted from parole violations, and he is not challenging the revocation of his parole. Therefore, June 2, 2002 constitutes both the accrual date of Singleton's § 1983 cause of action for his alleged unlawful seizure and the date that the statute of limitations began to run, for his unlawful seizure (or false imprisonment) ended on the same day that it began. Wallace, 127 S. Ct. at 1096 ("Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.").[3]

Although Singleton argues that the limitations period for his false imprisonment claim did not begin until September 2, 2004—the day when

---

[3] In reliance upon Wallace, defendants reason that Singleton's § 1983 claim "accrued on the day of the preliminary/bond hearing (August 2, 2002), which is the day he was detained pursuant to legal process." Doc. 64 at 4. In Wallace, however, the plaintiff remained in *continuous* custody from the date of his unlawful arrest until formal legal process was initiated against him. While Wallace "could have filed suit as soon as the allegedly wrongful arrest occurred," 127 S. Ct. at 1095, the statute of limitations on his false imprisonment claim did not commence until "he appeared before the examining magistrate and was bound over for trial", id. at 1097, for only then did his false imprisonment end. Unlike Wallace, Singleton was not held in continuous custody from the date of his seizure until charges were preferred against him. Rather, he was released on the same day that his alleged unlawful seizure began (June 2, 2002). As his seizure without legal process began and ended on the same day, the statute of limitations commenced to run from that date, not from the date that the arrest warrant later issued and he first appeared before a state magistrate (August 2, 2002).

the state court granted his motion to suppress the crack pipe—his argument is foreclosed by Wallace. There, the Supreme Court held directly that the limitations period on a § 1983 false imprisonment claim starts running as soon as the prospective claimant's false imprisonment ends. 127 S. Ct. at 1096-97. In cases (like Wallace) where a prospective claimant is held in continuous custody from the date of his warrantless arrest until he is later formally charged, his false imprisonment ends as soon as he is detained pursuant to legal process. Id. As Wallace so powerfully illustrates, there is no exception for detentions that are later undermined by court rulings in the claimant's favor.

In this case, Singleton's limitations period began on June 2, 2002, the date he was seized and released. But even if he had remained in continuous custody until he was formally charged with possession of cocaine, the limitations trigger would have been postponed only until August 2, 2002, because that is the day Agent Jennings served him with an arrest warrant and brought him before a state magistrate for a bond hearing. Doc. 1 ex. B. Under Georgia law, Singleton had two years from June 2, 2002 (or certainly no later than from August 2, 2002) to file his §

1983 claim. See O.C.G.A. § 9-3-33. Because he delayed filing such a claim until August 2005, it is time barred.

**B.  Singleton's Malicious Prosecution Claim**

Singleton did not raise any claim of malicious prosecution in either his initial or amended complaints. In fact, the first time he mentioned it was in his response to the defendants' motion for judgment on the pleadings, where he alleges that his claims for false imprisonment and malicious prosecution are "interdependent." Doc. 74. Although it is unable to state with any certainty why Singleton delayed raising a claim for malicious prosecution until that point in the litigation, the Court suspects that he raises the issue to dodge the impact of the Wallace opinion.

In any event, because the tort of malicious prosecution is "entirely distinct" from the tort of false imprisonment, Wallace, 127 S. Ct. at 1096, the Court will construe Singleton's malicious prosecution claim as an attempt to amend his complaint pursuant to Fed. R. Civ. P. 15. Since responsive pleadings were filed well before Singleton raised this claim, he is entitled to amend his complaint only "if justice so requires." Fed. R. Civ. P. 15(a). And justice does not require amendment here.

Throughout this case Singleton has focused on the harm resulting from the allegedly unconstitutional stop and search of his automobile on June 2, 2002, and the alleged planting of the crack pipe by the arresting officers. Before Singleton responded to the defendants' motion for judgment on the pleadings, neither party construed Singleton's complaint as including a claim for malicious prosecution. Although the Court recognizes that it must give a liberal construction to the pleadings of a pro se party, Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006), the most liberal construction imaginable fails to explain why Singleton would delay filing his malicious prosecution claim for such a long time period. Thus, his motion to amend his complaint to include such a claim should be **DENIED**.

Furthermore, even if the Court were to allow Singleton to bring a claim for malicious prosecution, that claim would lack merit. To establish a malicious prosecution claim under § 1983, a plaintiff must prove both the elements of the common law tort of malicious

prosecution *and* a violation of his right to be free from unreasonable seizures arising from that prosecution. Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003); Whiting v. Taylor, 85 F.3d 581, 584 & n.4 (11th Cir. 1996). As defendants point out, Singleton was never "seized" after he was formally charged with possession of cocaine,[4] for he was already in custody on a parole violation matter and remains so to this day (despite the state court suppression order and the prosecutor's dismissal of the drug possession charge). Thus, he has failed to establish an essential element of a federal malicious prosecution claim. Permitting Singleton to amend his complaint would provide him with no relief, therefore, and defendants' motion for judgment on the pleadings should be **GRANTED** on this issue.

---

[4] Singleton must prove that he was "seized in relation to the [malicious] prosecution." Kingsland, 382 F.3d at 1235. His seizure on June 2, 2002 "cannot serve as the predicate deprivation of liberty" because it occurred prior to initiation of judicial proceedings and "was not one that arose from malicious prosecution as opposed to false arrest." Id. (citations and quotation marks omitted).

## III. CONCLUSION

Accordingly, the defendants' motion for judgment on the pleadings pursuant to Rule 12(c) should be **GRANTED**, and Singleton's motion for summary judgment should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this _6th_ day of December **2007**.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA